IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Joseph E. Tillman (R-40962), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 2383 |
| v. ) | |
| ) | Judge Charles R. Norgle |
| Daryl Edwards, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Tillman, an Illinois prisoner at Menard Correctional Center proceeding *pro se*, brought this 42 U.S.C. § 1983 civil rights action against Stateville Correctional Center Assistant Warden Darryl Edwards, Stateville Internal Affairs Officer Mindi Pierce, and Stateville Nurse Cynthia Garcia (collectively "Defendants"). While confined at Stateville in 2011, Plaintiff broke his wrist. Defendants Edwards and Garcia allegedly acted with deliberate indifference to Plaintiff's need for medical attention by not sending him to an emergency room the day of his injury and, in response to Plaintiff preparing to sue Edwards and Garcia, Pierce allegedly retaliated against Plaintiff by transferring him to another facility. Currently before the Court are two motions for summary judgment: one from Defendants Edwards and Pierce; the other from Nurse Garcia. Plaintiff has responded to the motions, but not to Defendants' joint N.D. Ill. Local Rule 56.1 Statement of Material Facts. For the reasons stated herein, the Court grants Defendants' summary judgment motions and dismisses this case.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). To establish that a material

fact is undisputed, a party "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Rule 56(c)(1). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012); *Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations omitted). When considering the summary judgment record, the Court "construe[s] all facts and draws all reasonable inferences in favor of the nonmoving party." *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Consistent with this Court's local rules, Defendants jointly filed one Local Rule 56.1(a)(3) statement of material facts with their summary judgment motions. Doc. 161. ). With certain exceptions, the relevant factual assertions in the Local Rule 56.1(a)(3) statements cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules,

Defendants provided Plaintiff with a Local Rule 56.2 Notice, which explains how a litigant must respond to the Rule 56.1 Statement and summary judgment motion. Doc. 166.

Although Plaintiff responded to Defendants' memoranda of law in support of their summary judgment motions, *see* doc. 172, he did not respond to their Local Rule 56.1(a)(3) statements of facts in accordance with 56.1(b)(3)(B). "Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules." *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed.Appx. 642, 643 (7th Cir. 2011). Defendants' Rule 56.1 factual statements are thus unopposed and, to the extent they are supported by the record, deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Milton v. Slota*, 697 Fed. Appx. 462, 464 (7th Cir. Sept. 25, 2017) (unpublished) ("the [district] court was entitled to strictly enforce the local rule, even against a *pro se* litigant, by deeming uncontroverted statements of material fact admitted for the purpose of deciding summary judgment").

Since a district court may decide a summary judgment motion "based on the factual record outlined in the [Local Rule 56.1] statements," *Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004), the Court will recite the facts in Defendants' Local Rule 56.1(a)(3) statements, as modified where a statement inaccurately characterizes the cited material, and then determine whether, on those facts, Defendants are entitled to summary judgment.

## II. FACTS

On June 29, 2011, while Plaintiff was incarcerated at Stateville, he fell while playing basketball and broke his left wrist. Doc. 161 (Defs.' Statement of Facts) at ¶¶ 1, 6. At that time,

Cindy Garcia was a nurse at the prison, Darryl Edwards was an assistant warden, and Mindi Pierce was an Internal Affairs officer. *Id.* at ¶¶ 2-4.

Ten minutes after the injury, Plaintiff attracted the attention of a lieutenant who escorted Plaintiff to the healthcare unit ("HCU"). *Id.* at ¶ 7. Nurse Garcia and another nurse at the HCU sent Plaintiff for x-rays within 15-20 minutes of his arrival. *Id.* at ¶¶ 8-9. Upon his return to the HCU, an individual introduced himself as the head medical director of the prison. *Id.* at ¶ 10. The medical director, along with the nurses, examined Plaintiff's wrist and x-rays, and informed him that his wrist was fractured. *Id.* at ¶¶ 12-13. The doctor and Nurse Garcia recommended that Plaintiff be taken to an emergency room. His transport, however, was put on hold. *Id.* at ¶ 14. A transfer of an inmate outside the facility requires approval by a prison official. *Id.* at ¶ 15. Warden Edwards came to the HCU and asked the medical director if he could avoid incurring additional costs since two other inmates were already scheduled to be sent to the emergency room. *Id.* at ¶ 16. Plaintiff does not know who stopped his transport, but it did not occur and he remained at the prison. *Id.*

The medical director, with Nurse Garcia's assistance, applied a splint, which consisted of a half cast covering the top of Plaintiff's arm from his mid-forearm to his thumb, secured with gauze. *Id.* at ¶¶ 17-18 (citing 161-2, Exh. A at 10). After the splint was applied, Nurse Garcia examined the wrist and offered Plaintiff pain medication, which he refused. Doc. 161 at ¶ 19. The medical director then approved Plaintiff's return to his cell. *Id.* at ¶ 20.

The next morning, June 30, 2011, Plaintiff notified an officer that he needed to return to the HCU. Thirty minutes later, Plaintiff was taken there. *Id.* at ¶ 21 (citing 161-1, Exh. A, Compl. at 11-12 (the cited materials state that Plaintiff was in horrible pain throughout the night

4

and asked every officer and nurse he saw (Nurse Garcia was not one) to take him to the HCU). At the HCU, Nurse Garcia informed him that he was scheduled to see an outside specialist. She also gave him a blister pack of pain medication at that time. Doc. 161 at ¶ 22.

On July 1, 2011, Plaintiff saw an orthopedic specialist at Rezin Orthopedics. *Id.* at ¶ 23. The July 1, 2011 office note from Rezin Orthopedics physician Dr. Paul Sauer states the following:

> PHYSICAL EXAMINATION: On examination, there is a splint. The splint is removed. He has some swelling of the wrist. He has tenderness over his distal radius. His neurovascular status otherwise intact. No elbow tenderness. He has some pain with gentle testing of supination and pronation.
>
> IMAGING: Review of x-rays include hardcopy films brought in by the patient shows a metaphyseal fracture of the left distal radius and small ulnar styloid fracture, but overall alignment appears to be acceptable. There appears to be no extension of the articular surface.
>
> PLAN: I recommend a long-arm cast, re-check in two weeks with repeat x-rays of the left wrist which may be taken in the cast AP and lateral before being seen. They are requesting a bag to cover his left arm [so] that he could shower more frequently because of the inability to use his hand for routine hygiene. When he returns in two weeks, if the cast is fitting well, we will repeat an x-ray of the left wrist in the cast before being seen. I do not think he needs surgery for this.

Doc. 161-3, Exh. C, pg. 2. A long-arm cast was placed on Plaintiff's left arm at that time. Doc. 161 at ¶ 28. The doctor's note mentioned no problems with the temporary splint applied at the prison. *Id.* at ¶ 26.

In September or October of 2011, Plaintiff visited Stateville's law library. He asked the librarary clerk (a fellow inmate) how to file a lawsuit and the full names of Nurse Garcia, Warden Edwards, and the medical director. *Id.* at ¶ 30 (citing 161-2, Exh. B, Pl. Dep. 68-69). In August or September of 2012, a library clerk informed Plaintiff that officers with Stateville's Internal Affairs Department, including Defendant Pierce, were "inquiring what was going on at the law

5

library, who'd been coming over, who's filing lawsuits." Doc. 161 at ¶ 31 (quoting Exh. B, Pl. Dep. 73).

On October 12, 2012, an incident occurred between Plaintiff and Stateville Sergeant Fred Nash. Nash saw Plaintiff going to or returning from chow with boots on and not wearing his glasses. Doc. 161 at ¶ 33. Nash later asked Plaintiff about his appearance. Plaintiff responded: "At some point, a mother f----- gets tired of all the bull---t." *Id.* (quoting 161-5, pg. 2, Bates Stamp 540, Nash's 10/12/12 Incident Report). Nash responded: "nothing better happen to my people (staff)." *Id.* Plaintiff replied: "Your people ain't got nothing to do with this." *Id.* Nash wrote an Incident Report about the encounter. *Id.*

Later on October 12, 2012, Internal Affairs Officer Mindi Pierce questioned Plaintiff about the incident with Sergeant Nash. Doc. 161 at ¶¶ 34, 36. Pierce and Plaintiff also discussed the following: a September 30, 2012 phone conversation Plaintiff had with a relative, wherein he stated that—in order to avoid being transferred out of Stateville to a medium security facility, for which he was eligible—Plaintiff was going to start a fight; Plaintiff's gang affiliation; and Plaintiff's plan to file a lawsuit (the claims he sought to bring and against whom). *Id.* at ¶¶ 35-36. Plaintiff was placed on investigative status following the interview. *Id.* at ¶ 38.

On November 1, 2012, Plaintiff was transferred to Menard Correctional Center. Doc. 161 at ¶ 42. The transfer was approved by then Stateville Warden Marcus Hardy and by the IDOC Transfer Coordinator. The transfer order, prepared on October 31, 2012, was classified an "Emergency" and listed as the reason for the transfer "submitted due to safety and security of the institution." *Id.* at ¶ 43 (quoting Doc. 161-4 at pg. 6, Bates Stamp 6).

6

Also on October 31, 2012, Stateville personnel prepared: (1) a Security Reclassifcation and Escape Risk Assessment and (2) an Inmate Data Summary. The Security and Escape Risk Assessment listed Plaintiff as a low escape risk but as a medium security risk based on him being a "STG leader." *Id.* at ¶ 44 (quoting Doc. 161-4, pg. 9) ("STG" stands for security threat group). Although Plaintiff's time left on his sentence warranted medium security status, the 10/31/12 report was "AN OVERRIDE OF THE ASSESSED SECURITY DESIGNATION." *Id.*

The October 31, 2012 Inmate Data Summary for Plaintiff stated that he had been issued numerous disciplinary tickets: a ticket for a major disciplinary offense during the six months before the transfer; another three tickets for major offenses during the year before the transfer; two tickets for minor offenses during the year before his transfer; and 17 disciplinary tickets (nine major, eight minor) during his seven-year stay at Stateville. Doc. 161 at ¶ 45 (citing doc. 161-4, pg. 10). Most recently on October 12, 2012, Plaintiff had been issued a disciplinary ticket for assaulting other inmates. *Id.* In the year prior to Plaintiff's transfer, he was found guilty of the following major offenses: (1) fighting with an inmate on October 12, 2011; (2) writing a threatening gang-related letter in December 2011; and (3) threatening to punch a medical technician on May 30, 2012. *Id.* at ¶ 46.

On December 11, 2012, based on her notes from the October 12, 2012 interview and her subsequent investigation, Pierce issued a disciplinary report charging Plaintiff with: (1) threatening to harm an officer based on Plaintiff's September 30, 2102 phone conversation and (2) his leadership role in the Gangster Disciples. Doc. 161 at ¶ 40. Plaintiff does not dispute his gang affiliation. *Id.* at ¶ 41. On December 11, 2012, Menard officials held a hearing on the disciplinary charges issued by Pierce and found Plaintiff guilty of all charges. *Id.* at ¶ 47.

## III. DISCUSSION

Based on the events described above, Plaintiff asserted the following claims: Warden Edwards and Nurse Garcia acted with deliberate indifference to Plaintiff's fractured wrist by not sending him to an emergency room on the day of his injury and Mindi Pierce retaliated against Plaintiff when she issued a disciplinary ticket and participated in his transfer from Stateville to Menard. Although Plaintiff was allowed to proceed with these claims, now that a record has been developed, it is clear that he cannot succeed on them.

### A. Warden Edwards and Nurse Garcia:

Plaintiff contends that Warden Edwards and Nurse Garcia acted with deliberate indifference by refusing his transport to an emergency room on June 29, 2011 (the day he fractured his wrist). Plaintiff also states, in response to the summary judgment motions, that Nurse Garcia's assistance with improperly applying the temporary cast and returning Plaintiff to general population without pain medication, a sling, or a low bunk permit further demonstrates her deliberate indifference.

The Eighth Amendment's proscription against cruel and unusual punishment "is violated when prison officials demonstrate deliberate indifference to serious medical needs of prisoners— "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted); *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017). To prevail on his deliberate indifference claim, Plaintiff must show: "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating

8

[it]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

As to the first element (the claim's objective prong), the parties do not question, and a jury could certainly find, that Plaintiff's fractured wrist was a serious medical condition. *See Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016); *Daniel v. Cook County*, 833 F.3d 728, 732-33 (7th Cir. 2016) (in both cases, the parties and the court assumed an inmate's broken wrist was a serious medical condition). However, as to the second and third elements (the claim's subjective and causation prongs), the record does not support a finding that Nurse Garcia's and Warden Edwards' decision not to send Plaintiff to an emergency room on the day of his injury constituted deliberate indifference or caused him additional harm.

The Court initially notes that the deliberate indifference standard is different for medical and non-medical defendants. "Non-medical defendants, such as [Edwards], can rely on the expertise of medical personnel. . . . [and] will generally be justified in believing that the prisoner is in capable hands." *Arnett*, 658 F.3d at 755. However, as noted above, an officer cannot interfere with prescribed treatment for a prisoner's serious medical condition, and such conduct can establish deliberate indifference if the officer "both knew of and disregarded an excessive risk to inmate health." *Lewis*, 864 F.3d at 563.

For medical professionals, such as Nurse Garcia, "[a] plaintiff can show that the professional disregarded the [serious medical] need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that 'no minimally competent professional would have so responded under those circumstances.'" *Arnett*,

9

658 F.3d at 751 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).[1] "Disagreement between a prisoner and his doctor . . . about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Neither medical malpractice, nor negligence, nor even gross negligence "equate to deliberate indifference," *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006), and a defendant's action or inaction must have been based on a sufficiently culpable state of mind, "something akin to recklessness." *Arnett*, 658 F.3d at 751.

The record evidence—viewed most favorably for Plaintiff—establishes the following. Nurse Garcia, along with the medical director, initially recommended that Plaintiff be taken to an emergency room once x-rays confirmed he fractured his wrist; Warden Edwards, in an attempt to save costs, asked if an emergency room visit could be avoided; and Nurse Garcia and the medical director subsequently applied a temporary half cast to immobilize the wrist until Plaintiff could see an outside specialist. Nurse Garcia asked Plaintiff if he wanted medication for pain, which he refused. Early the next morning, after Plaintiff spent a night of agonizing pain, Plaintiff returned to the healthcare unit, where Nurse Garcia gave him a blister pack of pain medication and informed him that an appointment with an outside orthopedist was scheduled for the next day (two days post-injury). Plaintiff did not seek further medical attention that day. He saw an outside orthopedist within two days of his injury. The orthopedist removed the temporary cast,

---

[1] Similar to non-medical defendants, nurses can usually "defer to instructions given by physicians, [but] they have an independent duty to ensure that inmates receive constitutionally adequate care." *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015); *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) ("a nurse confronted with an 'inappropriate or questionable practice' should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action'") (citation omitted). In this case, the record is undeveloped as to whether Nurse Garcia objected to the decision not to send Plaintiff to an emergency room. The Court will thus assume that she acquiesced in the decision to keep Plaintiff at the facility on the day of his injury, and address whether that decision constituted deliberate indifference.

10

noted that x-rays from the day of the injury showed a fracture but also acceptable bone alignment, applied a long arm cast, and directed that Plaintiff return in several weeks for additional x-rays.

Even assuming, for purposes of summary judgment, that Warden Edwards stopped Plaintiff's transfer to an emergency room and that Nurse Garcia acquiesced without objection, noting in the record suggests that the care Plaintiff received was inadequate, much less so inadequate to support a finding of deliberate indifference.

Transferring an inmate to an emergency room shortly after confirming he sustained a broken bone may have been the prison's protocol or its medical personnel's preferred course of treatment. However, "[t]here is not one 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008) (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("the Constitution is not a medical code that mandates specific medical treatment."). There is no indication in the record that stabilizing Plaintiff's broken wrist with a temporary cast and scheduling an appointment with an orthopedist to occur within 48 hours of the injury is so unacceptable to support a finding of deliberate indifference. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 747 (7th Cir. 2017) (with respect to medical personnel, "the treatment they rendered [must have been] 'so far afield' from what one would expect that a jury could infer deliberate indifference.") (citation omitted); *Arnett*, 658 F.3d at 751 (the treatment decision must have been so out of the realm of standard medical practices that "no minimally competent professional would have so responded under those circumstances") (citation omitted) *see also Howe v. Nurse*, No. 1:15-cv-00771-WTL-DKL, 2016 WL 7210941, at *1 (S.D. Ind. Dec. 13, 2016) (though no two fractures may be alike, in a case where an inmate had an injury very similar

to Plaintiff's ("a non-displaced closed radial styloid fracture of his left wrist"), an emergency room's stabilization of the wrist with a temporary cast until a full cast could be applied was considered acceptable); *McDaniel v. Allen*, No. 3:12-cv-00213-JLH-JTK, 2013 WL 3422901, at *3-5 (E.D. Ark. July 8, 2013) (no deliberate indifference existed where an orthopedist's office informed prison doctor to immobilize a broken hand and arm with a temporary cast until the inmate could see the specialist several weeks later).

The x-rays taken of Plaintiff's wrist on the day his injury, as read by Rezin Orhopedics physician Dr. Paul Sauer, confirmed that Plaintiff had "a metaphyseal fracture of the left distal radius and small ulnar styloid fracture," but also that the "overall alignment appear[ed] to be acceptable." Doc. 161-3, pg. 2. Dr. Sauer's notes suggest nothing extraordinary about Plaintiff's fracture. Nor do his notes mention or suggest any wrongdoing by not immediately sending Plaintiff to an emergency room and, instead, applying a temporary cast until he saw a specialist two days later. *Id.* Plaintiff points to no evidence indicating that the treatment provided at Stateville before he saw an outside orthopedist was "so far afield of accepted professional standards" as to amount to deliberate indifference. *Arnett*, 658 F.3d at 751.

Nor does Plaintiff point to any evidence indicating the delay of two days before seeing an orthopedist or physician outside the prison caused him additional harm. "'A delay in the provision of medical treatment for painful conditions . . . can support a deliberate indifference claim.'" *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). But to prevail on such a claim, the plaintiff must "introduce[] verifying medical evidence that shows his condition worsened because of the delay." *Knight*, 590 F.3d at 466; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir.2007) (a plaintiff must "offer

12

'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm"). Plaintiff submits no such evidence. Even though Plaintiff states he suffered excruciating pain the first night following his injury, he also acknowledges that Nurse Garcia offered him pain medication that first night but Plaintiff refused, and that he saw Garcia early the next morning after he had been complaining of pain to prison personnel throughout the night.

The Court notes that Plaintiff includes in his response to the summary judgment motions medical records from August and September of 2012 indicating a need for physical therapy because of continuing pain and "clicking," *see* Doc. 172 at 36-38. But nothing in these notes suggests any wrongdoing with the initial care he received at Stateville in the days following his injury, or that the continuing pain and "clicking" was caused by errors in his initial treatment. *Fields*, 740 F.3d at 1111 (as in every tort case, the plaintiff must prove that his "injury [was] caused by the defendant's [allegedly] wrongful act").

Although the Court allowed Plaintiff's deliberate indifference claims to proceed, it is now clear that no evidence exists that Nurse Garcia's and Warden Edwards' failure to send Plaintiff to an emergency room on the day of his injury constituted deliberate indifference or caused Plaintiff to suffer additional harm. Summary judgment is often considered the moment in a case when "the non-moving party is required to marshal and present the court with the evidence [that] will prove h[is] case." *Goodman v. Natl. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).[2] This

---

[2] The Court notes that Plaintiff previously complained during discovery in this case that Defendants had not provided all the records from Rezin Orthopedics. Doc. 152 (Plaintiff's 9/12/16 Status Report). The Court also notes that the only medical evidence Defendants submit with their summary judgment materials is the one-page 7/1/11 letter from Dr. Paul Sauer at Rezin Orthopedis, which is quoted in its entirety above. *See* Doc. 161-3. If the medical evidence in this case consisted of only one page, the Court may be inclined to instruct the parties to further develop the record— even though this case has lingered for years—under the assumption that there must be more. But, as noted by Plaintiff in his 9/12/16 Status Report, he received x-rays and several doctor's notes from Rezin, one of which he attached to

record demonstrates that Plaintiff cannot succeed on his deliberate indifference claims, and summary judgment on these claims is thus warranted for Nurse Garcia and Warden Edwards.

## B. Plaintiff's First Amendment Retaliation Claim

Plaintiff's complaint alleges that Mindi Pierce retaliated against him for asking a prison library clerk how to file a lawsuit in the fall of 2011. According to Plaintiff, Pierce wrote a false disciplinary report in December of 2012 and sought Plaintiff's transfer to another facility based on Plaintiff's inquiries. Although Plaintiff was allowed to proceed with this claim, now that a record has been developed, it is clear the claim cannot succeed.

"To prevail on his First Amendment retaliation claim, [Plaintiff] must show that '(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action.'" *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Plaintiff "can prevail only if a reasonable fact finder could conclude from this record that the defendants intended to deter protected speech." *Shaw v. Litscher*, No. 17-1223, 2017 WL 4548455, at *2 (7th Cir. Oct. 12, 2017).

The record before this Court could support a jury finding of the first two elements of Plaintiff's retaliation claim. Plaintiff's inquiries about how to file a lawsuit regarding the medical

---

his Status Report. Doc. 152 at 3 (copy of Dr. Sauer's 8/25/11 report explaining that Plaintiff's cast was removed eight weeks after placement of the full cast, that x-rays then indicated his wrist was healing, and that Plaintiff should continue with physical therapy or at least exercises in his cell that were shown to him that day). Plaintiff also submits medical records from Stateville, Wexford, and a physical therapist. *See* Doc. 172 at 32-40. Additionally, Garcia explains in her reply to Plaintiff's summary judgment response that Defendants turned over all records received from Rezin. Doc. 174 at 3. The Court is satisfied that the two reports from Rezin and other medical evidence in the record constitute all or most of the medical evidence of this case.

care he received (or did not receive) could be considered First Amendment activity. A prisoner has a First Amendment right to file a lawsuit, and he may seek assistance from others to file his suit. *See Harris v. Walls*, 604 Fed. Appx. 518, 521 (7th Cir. 2015) (unpublished); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Also, disciplining a prisoner and/or transferring him to another facility can support a First Amendment claim if the transfer was based on a retaliatory motive. *Gomez*, 680 F.3d at 866 (transfer from Stateville to Menard, in retaliation for filing a grievance or suit, sufficed to establish a deprivation likely to deter future protected First Amendment activity); *see also Babcock*, 102 F.3d at 275 ("If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access, he has a claim under § 1983.") (citation omitted).

But no reasonable jury could find that Plaintiff's preparation of a lawsuit was a motivating factor behind his transfer to Menard or the disciplinary ticket filed against him. To establish that his First Amendment activity was a motivating factor in a defendant's adverse action, Plaintiff "must show that the protected speech caused, or at least played a substantial part in, [Pierce]'s decision" to take adverse action against Plaintiff. *Spiegla v. Hull*, 371 F.3d 928, 942–43 (7th Cir. 2004). There must be "a causal link between the protected act and the alleged retaliation." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). Plaintiff need not show that his First Amendment activity "was the only factor that motivated the defendant[] but [he] must show that it was 'a motivating factor.'" *Id.*

In this case, Plaintiff relies almost entirely on the fact that Pierce was aware of Plaintiff's interest in filing a lawsuit.[3] According to Plaintiff, Pierce asked him during the October 12, 2012

---

[3] Plaintiff contends a clerk in the prison law library (he does not remember who) told him that someone from Internal Affairs asked who was seeking information about filing suit. *See* Doc. 161 at ¶ 31 (citing 161-2 at 15–17, Pl. Dep. at

15

interview if Plaintiff was contemplating filing a lawsuit, who the lawsuit would be against, and what claims Plaintiff sought to assert. Doc. 161 at ¶ 35. But, "mere knowledge that someone has engaged in protected speech does not permit an inference that an adverse action occurred because of this knowledge." *Shaw v. Litscher*, No. 17-1223, 2017 WL 4548455, at *2 (7th Cir. Oct. 12, 2017) (citing *Healy v. City of Chicago*, 450 F.3d 732, 741 (7th Cir. 2006)). Plaintiff does not contest that Pierce asked him about other issues: Plaintiff's exchange of words with Sergeant Nash earlier that day; a phone conversation wherein Plaintiff told a relative that he planned to start a fight to prevent being transferred out of Stateville; and his leadership role in the Gangster Disciples. Doc. 161 at ¶ 36. Nor does Plaintiff contest the fact that he had numerous disciplinary violations during his years at Stateville. *Id.* at ¶¶ 45-46.

Additionally, Plaintiff's protected activity (asking about and preparing to file a lawsuit) occurred almost a year before the alleged retaliatory conduct. Plaintiff asked a prison library clerk about how to file a lawsuit in September and October of 2011. His transfer occurred on November 1, 2012 and Pierce's disciplinary charges were brought in December of 2012. Although Pierce asked Plaintiff if he was planning to file suit during her October 12, 2012 interview, his retaliation claim still requires a finder of fact to connect Plaintiff's asking about filing suit in the fall of 2011 to administrative actions taken over a year later. The Seventh Circuit has held in several cases that a significant time lag between the First Amendment activity and adverse conduct may be "too long to permit a reasonable inference of retaliation." *Shaw v.*

---

72-76). Defendant Pierce contends that Plaintiff's statement as to what the clerk said is inadmissible hearsay. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("a court may consider only admissible evidence in assessing a motion for summary judgment") (citation omitted). The Court agrees that Plaintiff seeks to admit the clerk's comment for the truth of the matter asserted in violation of federal evidentiary rules on hearsay. *See* Fed. R. Evid. 801(c) and 802; *see also Shaw*, 2017 WL 4548455, at *2; *United States v. Leonard–Allen*, 739 F.3d 948, 954 (7th Cir. 2013)). Though the library clerk's statement may be inadmissible, the conversation between Plaintiff and Officer Pierce is admissible and establishes the same fact—that Pierce knew Plaintiff was considering filing a lawsuit.

16

*Litscher*, No. 17-1223, 2017 WL 4548455, at *2 (7th Cir. Oct. 12, 2017) (seven-month period between protected activity and allegedly retaliatory conduct was too long to allow an inference of retaliation) (citing *Feldman v. Olin Corp.*, 692 F.3d 748, 757 (7th Cir. 2012) (eight months between protected activity and adverse action was insufficient); *Kidwell v. Eisenhauer*, 679 F.3d 957, 966–67 (7th Cir. 2012) (five weeks between protected activity and adverse action was insufficient); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001) (same for four-month interval)).

Considering Plaintiff's more recent conduct (his threat to start a fight in order to remain at Stateville and his antagonistic behavior with Sergeant Nash) along with his gang leadership role and his numerous disciplinary violations, no reasonable jury could conclude that Plaintiff's First Amendment activity in September and October of 2011 was a motivating factor for Pierce's adverse conduct at the end of 2012. As previously stated, summary judgment is the moment in a case when the non-moving party must present the court with the evidence that will prove his case. *Goodman*, 621 F.3d at 654. Based on this record, Plaintiff cannot establish a claim of retaliation. Accordingly, summary judgment is warranted for Pierce.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions for summary judgment [160, 164] are granted. The claims against them are dismissed. Final judgment for Defendants shall be entered.

If Plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment and pay the $505.00 filing fee. Fed. R. App. P. 4(a)(1). Under Fed. R. App. P. 24(a)(1) and 28 U.S.C. § 1915, Plaintiff may seek, via a motion in this Court, to proceed *in forma pauperis* on appeal, which will allow him to pay that fee in installments. The fee must be paid regardless of the appeal's outcome; however, if Plaintiff is successful, he may be

able to shift the cost to Defendants. *See* Fed. R. App. P. 39(a)(3); *Thomas v. Zatecky*, 712 F.3d 1004, 1005 (7th Cir. 2013) ("A litigant who proceeds *in forma pauperis* still owes the fees. If he wins, the fees are shifted to the adversary as part of the costs; if he loses, the fees are payable like any other debt."). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit or appeal a judgment in federal court without prepaying the filing fee, unless he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of the entry of this judgment, *see* Fed. R. Civ. P. 59(e), and cannot be extended. Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment. Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Rule 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date: 12/7/17     /s/ Charles Norgle
Charles R. Norgle
U.S. District Judge